UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**CARS UNLIMITED II, INC.,**
    **Plaintiff,**

**v.**                                                     Civil Action No. 2:06cv305

**NATIONAL MOTOR COMPANY, INC.,**
    **Defendant.**

---

**NATIONAL MOTOR COMPANY, INC.,**
    **Counterclaim Plaintiff,**

**v.**

**CARS UNLIMITED II, INC.,**
    **Counterclaim Defendant,**
**and**

**DONNIE ANTOINE HYDER,**
    **Counterclaim Defendant,**
**and**

**SHARON J. KEE,**
    **Counterclaim Defendant.**

## ORDER AND OPINION

This matter is before the court on a motion, filed jointly by Cars Unlimited II, Inc. and Donnie Hyder (collectively "Cars Unlimited"), to dismiss Counts Two and Four of National Motor Company, Inc.'s ("National") second amended counterclaim ("counterclaim"). After examination of the briefs and record, the court determines that oral argument is not necessary as the facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. For the reasons set out herein, Cars Unlimited's motion is **DENIED**.

## I. Factual and Procedural Background

Cars Unlimited initiated the instant suit on June 6, 2006, alleging that National breached the contract titled "Security Agreement" that the parties entered into in late 2005. Pursuant to such contract, National loaned Cars Unlimited, a used car dealership, up to $300,000 and, in exchange for such loan, National received a security interest in all motor vehicles and consumer credit contracts owned by Cars Unlimited. Cars Unlimited contends that National breached the Security Agreement in April of 2006 when National failed to disburse approximately $26,000 for the purchase of a vehicle when nearly $30,000 remained on Cars Unlimited's credit line.[1]
In contrast, National contends that it was Cars Unlimited that breached the Security Agreement both by failing to directly tender payments submitted by vehicle purchasers and by stopping payment on a Cars Unlimited business check for $27,560. National further alleges in its counterclaim that Cars Unlimited has, among other things: (1) failed to maintain collateral pledged under the Security Agreement; (2) breached the contractual warranty stating that pledged collateral was free of liens or security interests as First South Bank has a prior financing statement on file with the North Carolina Secretary of State; and (3) sold or otherwise disposed of collateral other than in the ordinary course of business utilizing fraudulently obtained titles and triplicate original consumer credit contracts that National did not know existed.

On September 6, 2006, Cars Unlimited filed the instant motion, seeking to dismiss Counts Two and Four of National's counterclaim. National filed its response in opposition to the

---

[1] Although not directly relevant to the instant motion, the parties dispute whether the Security Agreement established a revolving credit line whereby Cars Unlimited had the <u>right</u> to borrow money so long as the outstanding balance was less than $300,000, or whether after the initial loan of approximately $300,000, National had <u>discretion</u> as to whether or not to re-loan money subsequent to Cars Unlimited paying down a portion of the outstanding principal.

motion to dismiss on September 26, 2006, and a rebuttal was filed on October 23, 2006.[2]  The court notes that numerous hearings as well as multiple attempts at settlement by the parties, including a settlement conference before a Magistrate Judge, have delayed the resolution of the instant motion.

## II.  Standard of Review

A claim should not be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) "unless it appears beyond doubt that the [claimant] can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  As a district court's role at the 12(b)(6) stage is to test the "legal sufficiency of the [claim], and not the facts in support of it," and the court must "assume the truth of all facts alleged in the [claim] and the existence of any fact that can be proved, consistent with the [claim's] allegations." Eastern Shore Markets, Inc. v. J.D. Associates Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000).  In considering the legal sufficiency of the claims, federal courts "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989) (quoting Conley, 355 U.S. at 48).  The court is not, however, bound by legal conclusions set forth in a counterclaim nor must it accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Markets, 213 F.3d at 180.

Although pursuant to Federal Rule of Civil Procedure 8(a) both claims and counterclaims

---

[2] All such filings are timely as a 45-day stay was effectuated by consent order and filing extensions have been granted by court order.

3

need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 8(a), 9(b). The "circumstances" indicated in Rule 9(b) include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990)); Stone Castle Financial, Inc. v. Friedman, Billings, Ramsey & Co., 191 F. Supp. 2d 652, 662 (E.D. Va. 2002). The Fourth Circuit has recognized that the heightened pleading rule has four purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of. . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc., 755 F. Supp. 1055, 1056-57 (S.D. Ga. 1990)). The Harrison opinion cautioned, however, that a court "should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied: (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Id.; see also Rogers, 883 F.2d at 325 (reversing the district court's dismissal of plaintiff's ERISA claim even though plaintiff's complaint "to say the least, was inartfully drafted," because the Fourth Circuit has "long held that a motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff

4

would be entitled to no relief under <u>any state of facts</u> which could be proved in support of his claim") (emphasis added) (citations omitted).

### III.  Analysis

The motion to dismiss presently pending before the court seeks to dismiss Count Two of the counterclaim, alleging fraud, and Count Four, alleging business conspiracy.  As discussed in greater detail below, the court denies the motion to dismiss both Counts Two and Four.

**A.  Count Two: Fraud**

Count Two of the counterclaim alleges that Cars Unlimited defrauded National: (1) by the affirmative misrepresentation that the collateral pledged by Cars Unlimited "is free of any prior liens, security interests, or other encumbrances or interests of any party"; and (2) through the failure to disclose Cars Unlimited's practice of executing triplicate original consumer credit contracts (Counterclaim ¶¶ 26, 30).  The motion presently before the court contends that the first fraud claim should be dismissed because the challenged misrepresentation is a statement of law; because reliance upon such representation was unreasonable; and because National failed to allege that it suffered any damage as a result of such allegedly fraudulent statement.  The motion further contends that the second fraud claim should be dismissed because Cars Unlimited had no affirmative duty to disclose its practice of executing triplicate original consumer credit contracts and because National failed to allege that Cars Unlimited intended to defraud National through such practice.  After examining the counterclaim, the Security Agreement, and the parties' briefs, the court finds that the counterclaim sufficiently sets forth both allegations of fraud.

**1.  National's counterclaim sufficiently alleges fraud with respect to Cars Unlimited's misrepresentation involving prior financing statements.**

Cars Unlimited first contends that the statement denying the existence of a prior security

interest, in this case a prior financing statement, is a misrepresentations of law, not fact, and therefore, it cannot form the basis for a fraud claim.  See Hicks v. Wynn, 137 Va. 186, 196, 119 S.E. 133, 137 (1923) (recognizing that misrepresentations of law cannot constitute fraud because "[t]he truth or falsehood of such a representation can be decided by ordinary vigilance and attention").  Although the court recognizes that assessing the validity of a prior financing statement or other encumbrance involves legal determinations, whether a financing statement is on file with the Secretary of State is a question of fact; either a statement has been filed, or it has not.  Thus, although the legal validity of an identified lien or financing statement may be presumed to be equally within the knowledge of all parties, the actual existence of a tangible financing statement on file with the Secretary of State is a question of fact.[3]  Such fact can plainly form the basis of a fraud claim, especially when, as alleged here, the encumbered party conceals the existence of the encumbrance in order to induce another to enter into a contract.

Second, Cars Unlimited contends that National failed to establish that its reliance on Cars Unlimited's allegedly fraudulent statements was reasonable because "it is not enough for a plaintiff in a fraud action to show that it acted to its detriment in response to the defendant's false representation," but rather, "[i]n order to prove reliance, a plaintiff must demonstrate that its reliance upon the representation was reasonable and justified."  Hitachi, 166 F.3d at 629

---

[3] The court notes the difference between a representation indicating that collateral is "free of any prior liens, security interests, or other encumbrances or interests of any party" and a representation indicating that an identified third party claim against collateral fails to effectuate a valid third party interest in such collateral.  The former representation naturally reads as a factual guarantee relating to the present quality and character of property, that is, no third parties have claimed an interest, whereas the latter naturally reads as an opinion or legal claim that although a third party asserts an interest in collateral, such interest is invalid based on the law.  Here, the counterclaim alleges a misrepresentation of fact, especially when the contract provision relied upon is considered in conjunction with the warranty guaranteeing that "no other Financing statement covering any of the Collateral is on file in any public office" (Security Agree. 2).

6

(emphasis added) (citations omitted). In determining what qualifies as reasonable reliance, the Fourth Circuit has held that the "touchstone of reasonableness is prudent investigation." Id.; see Horner v. Ahern, 207 Va. 860, 863-64, 153 S.E.2d 216, 219 (1967) (quoting Costello v. Larsen, 182 Va. 567, 571-72, 29 S.E.2d 856, 858 (1944)) ("[I]f false representations are made regarding matters of fact, and the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them, sees fit to trust himself in the hands of one whose interest it is to mislead him, the law, in general, will leave him where he has been placed by his own imprudent confidence."). An exception to the requirement that a plaintiff perform a prudent investigation recognizes that when the party making the false representation "throws the other off guard or diverts him from making the reasonable inquiries . . . Virginia law will forgive an incomplete investigation [as] 'one cannot, by fraud and deceit, induce another to enter into a contract to his disadvantage, then escape liability by saying that the party to whom the misrepresentation was made was negligent in failing to learn the truth.'" Bank of Montreal v. Signet Bank, 193 F.3d 818, 828 (4th Cir. 1999) (quoting Nationwide Ins. Co. v. Patterson, 229 Va. 627, 631, 331 S.E.2d 490, 492 (1985)). Virginia courts have also recognized that in certain circumstances the false representation that a plaintiff challenges as fraudulent may also act as the "diversion" that eliminates the investigation requirement. Bank of Montreal, 193 F.3d at 828 n.4; Van Deusen v. Snead, 247 Va. 324, 328-29, 441 S.E.2d 207, 209-10 (1994).

      Here, although the court recognizes that National may ultimately be unable to prevail on the actual fraud claim because it may fail to establish that it was diverted from conducting an investigation, at this stage, with the factual record undeveloped, the court is unable to resolve such issue. It is, however, apparent that the counterclaim adequately sets forth an allegation of actual fraud and Cars Unlimited is on notice as to the facts and legal issues that form the

foundation of such claim. Although the counterclaim does not expressly state that National investigated or was diverted from investigating the alleged misrepresentation, it does state that National "actually and justifiably relied upon Cars Unlimited's and Hyder's warranty" that its collateral would be free from encumbrances (Counterclaim ¶ 27). Furthermore, to the extent that this court does require that National plead diversion, one provision of the Security Agreement purports to grant National a first priority interest in Cars Unlimited's assets and a <u>separate provision</u> expressly warrants that no financing statements are on file in any public office; National's counterclaim incorporates the Security Agreement by reference and attaches it as an exhibit. Although is it undeniable that National could have more effectively set forth its fraud claim, the court "hestiate[s] to dismiss [the counterclaim] under Rule 9(b)" for failing to adequately allege fraud because the court is satisfied "(1) that [Cars Unlimited] has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that [National] has substantial prediscovery evidence of those facts." <u>Harrison</u>, 176 F.3d at 784.

Third, Cars Unlimited contends that the counterclaim fails to allege damages resulting from the alleged fraud. Although, once again, the court recognizes that National may ultimately be unable to prevail on its fraud claim as there may not be any "resulting damage" stemming from the existence of the First South Financing Statement,[4] the counterclaim sufficiently sets forth the facts and legal allegations necessary to effectively plead fraud. Notably, National alleges that Cars Unlimited's fraudulent statements regarding the lack of third party security

---

[4] In order to prevail on its actual fraud claim National must prove: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party mislead, and (6) <u>resulting damage</u> to the party misled." <u>Hitachi Credit America Corp. v. Signet Bank</u>, 166 F.3d 614, 628 (4th Cir. 1999) (quoting <u>Evaluation Research Corp. v. Alequin</u>, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994)) (emphasis added).

interests in Cars Unlimited's assets are what induced National to enter into the Security Agreement (Counterclaim ¶¶ 26-27) and that further fraud stemming from such contract resulted in the loss of National's collateral as well as other damages (Counterclaim ¶¶ 28-33). Additionally, although Cars Unlimited attempts to excise and independently address the fraud allegations set forth in counterclaim paragraphs twenty-six and twenty-seven from the rest of the paragraphs alleging fraud, other portions of the counterclaim indicate that National is alleging a single fraudulent scheme that ultimately resulted in over $400,000 in damages to National.[5] After reading the counterclaim in its entirely, as well as the Security Agreement incorporated into the counterclaim, the court determines that National has sufficiently pled actual fraud.[6] As previously noted, the court recognizes that National may not ultimately succeed on such claim based on its lack of an investigation into prior financing statements; however, because at this stage in the proceedings the factual record has not been developed and the court is unable to determine whether National was diverted, the motion to dismiss must be denied.

### 2. National sufficiently alleges fraud with respect to Cars Unlimited's alleged concealment of its practice of executing triplicate consumer credit contracts.

Under Virginia law, National may establish a claim of actual fraud based on the intentional concealment or omission of material facts. Van Deusen, 247 Va. at 328, 441 S.E.2d

---

[5] Counterclaims paragraphs forty through forty-two allege a single fraudulent scheme which began with false statements made in order to induce National to enter into the Security Agreement and loan Cars Unlimited $300,000 and ended with National suffering damages of over $400,000. Cars Unlimited's motion to dismiss presents no justification for considering the two fraud claims wholly independent from each other.

[6] Rule 9(b) requires that fraud be pled with particularity which requires, inter alia, that the claim set forth what was obtained by the opposing party through misrepresentations. Harrison, 176 F.3d at 784. Here, National alleges that the fraudulent representations induced it to enter into a contract whereby Cars Unlimited obtained a $300,000 loan; thus, National has met such portion of the particularity requirement.

at 209. Although absent a duty to disclose, silence does not constitute fraud, "[c]oncealment of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud." Hitachi, 166 F.3d at 629 (quoting Allen Realty Corp. v. Holbert, 227 Va. 441, 450, 318 S.E.2d 592, 597 (1984)). Concealment may occur by either words or conduct and it can rise to the level of fraud because "it always involves deliberate nondisclosure designed to prevent another from learning the truth." Id. Thus, Virginia courts have required "either an allegation or evidence of a knowing and a deliberate decision not to disclose a material fact." Norris v. Mitchell, 255 Va. 235, 240-41, 495 S.E.2d 809, 812 (1998); see also Bank of Montreal, 193 F.3d at 829 (recognizing that a duty to disclose may arise if "the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist").

Here, an examination of the counterclaim indicates that conflict exists in National's factual allegations; specifically, paragraph thirty-one suggests that Cars Unlimited made an <u>affirmative statement</u> that only one original consumer credit contract existed whereas paragraph thirty suggests that Cars Unlimited <u>concealed</u> its practice of executing triplicate originals (Counterclaim ¶¶ 30-31). However, even assuming that National is relying on a theory of concealment, the court finds that, at this stage in the proceedings, National has sufficiently set forth an allegation of fraud. First, National plainly sets forth "an allegation . . . of a knowing and a deliberate decision not to disclose a material fact," Norris, 255 Va. at 241, 495 S.E.2d at 812, as the counterclaim states that Cars Unlimited "intentionally omitted a material fact by failing to disclose" the existence of triplicate original consumer credit contracts (Counterclaim ¶ 30). The counterclaim indicates that such practice was material because Cars Unlimited represented that National "would have a valid security interest and lien . . . in the consumer credit contracts"

(Counterclaim ¶ 29), yet because Cars Unlimited neither produced all original consumer credit contracts nor even informed National of their existence, it appears that National never had such valid security interest. Second, the Security Agreement at least suggests that Cars Unlimited had a duty to disclose the triplicate contracts as it not only purports to grant National a security interest in "all consumer credit contracts and security [a]greements" as well as "all records [o]f any kind related to the foregoing," but it also states that "[w]henever requested, Owner agrees to execute and deliver to Creditor such financing statements or other documents which Creditor believes are appropriate to create, preserve, perfect, or validate its security interest in the Collateral . . ." (Security Agree. 1-2). Therefore, without resolving the question of whether Cars Unlimited did in fact owe a duty of disclosure with respect to the practice of executing triplicate original consumer credit contracts, the court determines that National's counterclaim sets forth sufficient allegations indicating that a duty to disclose exists and that Cars Unlimited made a deliberate decision to conceal such practice from National.[7]

### B. Count Four: Business Conspiracy

Count Four of National's counterclaim alleges that Cars Unlimited, acting through its principals Paul Zimmerman, Jr. and Donnie Hyder, conspired with Sharon J. Kee, a North Carolina Notary Public and former Cars Unlimited employee, to fraudulently induce National into loaning money to Cars Unlimited so that Zimmerman, Hyder, and Kee could use such funds

---

[7] Cars Unlimited contends that the counterclaim only alleges fraud by hindsight, that is, the counterclaim does not allege that the triplicate originals were part of a scheme to defraud, but rather, were already in existence and later became a convenient tool in liquidating National's collateral. In light of testimony presented at hearings, it remains a distinct possibility that the multiple originals were merely an after-the-fact convenient tool; however, considering only the pleadings, as this court must, National has sufficiently alleged that the triplicate originals were prepared as part of the scheme to defraud.

for their own purposes, thereby injuring National. Furthermore, National contends that the conspirators successfully damaged National through their scheme to create triplicate original consumer credit contracts, fraudulently obtain duplicate titles, and then use such documents to sell National's collateral to third party discount financiers, including BayQuest Capital Corporation and Mid-Atlantic Finance Company.[8] In response to such allegations, Cars Unlimited seeks to dismiss Count Four because the alleged torts were committed in North Carolina and do not fall within the purview of the Virginia conspiracy statute; because a corporation cannot conspire with its agents; because National fails to allege an agreement to conspire; and because the counterclaim fails to allege that the conspirators' primary goal was to injure National's business. After careful consideration of the instant motion and associated briefs, the court finds that, at this stage in the proceedings, Cars Unlimited is unable to establish that Count Four fails to state a claim on which relief can be granted.

### 1. Virginia law applies, the complaint sets forth separate parties that allegedly entered into a conspiracy, and the complaint adequately alleges an agreement to conspire.

The litigants do not dispute the fact that, pursuant to Virginia law, tort claims are governed by the place of the wrong; rather, they dispute whether the "wrong" alleged in the counterclaim occurred in North Carolina or Virginia. Addressing such disagreement, under

---

[8] Although "business conspiracy, like fraud, must be pleaded with particularity, and with more than 'mere conclusory language,'" Government Employees Ins. Co. v. Google, Inc., 330 F. Supp. 2d 700, 706 (E.D. Va. 2004) (citations omitted), National's detailed allegations including the names of both the conspirators and the third party financiers, the manner in which the conspiracy was effectuated, and the gain achieved by the conspirators through liquidating National's collateral, meets such heightened pleading standard. Notably, after considering the justifications for the heightened standard discussed in Harrison, 176 F.3d at 784, it is apparent that the counterclaim sufficiently puts Cars Unlimited on notice of the claims against it so that it can prepare an adequate defense and that National had significant evidence of the facts constituting its claim prior to discovery.

Virginia law the place of the wrong is defined as "the place where the last event necessary to make an actor liable for an alleged tort takes place, even if the actor has no control over the location of that last event." Insteel Industries, Inc. v. Costanza Contracting Co., 276 F. Supp. 2d 479, 486 (E.D. Va. 2003) (applying Virginia law). The last event necessary in a conspiracy to defraud "is the reasonable reliance on the false representation that causes the injury." Id.; see Jordan v. Shaw Indus., No. 96-2189, 1997 WL 734029, at *3 (4th Cir. Nov. 26, 1997) (unpublished) (quoting Restatement (First) Conflicts of Laws § 377 n.4 (1934)) (recognizing that when fraud is alleged "the place of the wrong is where the loss is sustained, not where the fraudulent representations are made"). Thus, here, as in Insteel and Jordan, the law of the forum where the party allegedly defrauded is headquartered governs tort claims as such locale is both the place where such party relied on the false representations and where its loss was sustained. Because the facts presented by National, which are presumed true at this stage in the proceedings, indicate that National both relied on Cars Unlimited's allegedly false representations in Virginia and sustained a loss in Virginia, Virginia substantive law applies to the conspiracy claim.

Although Cars Unlimited correctly highlights both that a corporation cannot conspire with itself and that a conspiracy allegation must allege an agreement to conspire, a review of the counterclaim indicates that National effectively alleges both that Sharon Kee was a non-employee of National when she conspired with Cars Unlimited and that Kee and Cars Unlimited "agreed upon a scheme" to defraud National (Counterclaim ¶¶ 40-42). Likewise, nothing in the counterclaim suggests that Kee was Cars Unlimited's agent. Although the court recognizes that Kee's testimony, presented on July 11, 2006, at a hearing on National's motion for a temporary restraining order, suggests that her participation in the alleged conspiracy is most accurately categorized as acts committed by a temporary employee or agent of Cars Unlimited and not as a

separate and independent party, at the motion to dismiss stage, the court is not permitted to consider such testimony.[9] Thus, based on the facts as alleged by National, the counterclaim sets forth separate parties that agreed to conspire against National.

### 2. Virginia law does not require that the counterclaim allege that the conspirators' "primary purpose" was to injure National's business.

Cars Unlimited's motion to dismiss contends that the conspiracy claim fails as a matter of law because the counterclaim fails to allege that the conspirators' primary and overriding purpose was to damage National. Cars Unlimited relies on Petra Intern. Banking Corp. v. First American Bank of Virginia, 758 F. Supp. 1120 (E.D. Va. 1991) and Nationwide Mutual Fire Ins. Co. v. Jones, 577 F. Supp. 968 (W.D. Va. 1984) for the proposition that for conduct to fall within Virginia's conspiracy statute it "must be directly aimed toward damaging [the opposing party's] business, trade, reputation or profession" and that business injuries cannot be "a result or secondary effect of an action taken for mere personal gain." Petra, 758 F. Supp. at 1142 (quoting Nationwide, 577 F. Supp. at 970). However, the Nationwide opinion relied on by Cars Unlimited expressly acknowledges that the federal court was construing Virginia's statue without the aid of legislative history or a Virginia Supreme Court case discussing the statute. Nationwide, 577 F. Supp. at 969. Furthermore, subsequent to both Nationwide and Petra, the

---

[9]Although Kee's testimony suggests that National's conspiracy claim will ultimately fail, Cars Unlimited is unable to establish that such claim fails as a matter of law without improperly referencing such testimony. National, recognizing the impropriety of considering Kee's testimony at the motion to dismiss stage, filed a motion to strike the portions of Cars Unlimited's rebuttal brief referencing facts outside the pleadings. Because the court declines to convert the instant motion into a motion for summary judgment, the court grants National's motion to strike such references. The court reiterates, however, that uncontroverted and apparently credible testimony suggests both that Kee only acted as an agent of Cars Unlimited and that she gained nothing from the alleged conspiracy other than payment for her time as a temporary employee. Thus, as this matter progresses beyond the motion to dismiss stage, it appears that National will have a difficult time sustaining its conspiracy claim.

Virginia Supreme Court squarely addressed Virginia's conspiracy statue and cast significant doubt on the rule quoted above. Specifically, in Commercial Business Systems, Inc. v. Bellsouth Services, Inc., 249 Va. 39, 47, 453 S.E.2d 261, 267 (1995) (hereinafter "CBS"), the Virginia Supreme Court stated: "[W]e do not think that, as a general proposition, the conspiracy statutes require proof that a conspirator's primary and overriding purpose is to injure another in his trade or business. The statutes do not so provide, and such a requirement would place an unreasonable burden on a plaintiff." Id.  Additionally, the CBS opinion rejected the defendant's claim that Virginia's conspiracy statutes require proof of "actual malice," noting that although the facts of CBS were sufficient for a jury to reasonably conclude that the defendant "harbored personal spite" against the plaintiff, Virginia's statutes "merely require proof of legal malice, i.e., that [the defendant] acted intentionally, purposely, and without lawful justification." Id. at 47, 266-67. Subsequent to CBS, the Fourth Circuit recognized that Nationwide and Petra are no longer controlling and that a plaintiff alleging statutory conspiracy must only establish: (1) that there was a conspiracy to harm the plaintiff; (2) that the defendant acted with "legal malice" toward plaintiff; and (3) that the defendant's conspiratorial actions caused plaintiff to suffer damages. Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 108 F.3d 522, 526 (4th Cir. 1997).

  Here, considering the facts in a light most favorable to National and applying the test set forth in Multi-Channel, the court concludes that the counterclaim presents a valid allegation of statutory conspiracy. First, National alleges that Cars Unlimited and Kee "agreed upon a scheme" whereby they would fraudulently induce National to lend money to Cars Unlimited, represent to National that adequate collateral secured the loan, and then liquidate National's collateral for their own benefit. The scheme was allegedly carried out by misleading National

15

into thinking that it had a perfected security interest in consumer credit contracts when in reality Cars Unlimited retained an original consumer credit contract that it could utilize to dispose of National's collateral (Counterclaim ¶ 41). Second, "legal malice," defined by the Virginia Supreme Court as proof that the defendant "acted intentionally, purposely, and without lawful justification," CBS, 249 Va. at 47, 453 S.E.2d at 267, is properly alleged in the counterclaim as National asserts that the conspirators used the retained original consumer credit contracts as well as "fraudulently obtain[ed] duplicate titles to the automobiles" to "intentionally, purposefully and without lawful justification" convert National's collateral into funds for the benefit of the conspirators (Counterclaim ¶ 42).[10] Third, National alleges both that such actions willfully denied National of the benefit of its collateral, injuring National in its trade, and that "[a]s a result of such conspiracy," National Motor suffered over $400,000 in damages (Counterclaim ¶¶ 42-43). Based on such assertions and all the factual allegations set forth in the counterclaim, the court denies the motion to dismiss Count Four.

### IV. Conclusion

After careful consideration of the counterclaim and Cars Unlimited's motion to dismiss, the court concludes that National has sufficiently set forth allegations of fraud relating to both the existence of prior financing statements and Cars Unlimited's concealment of its practice of executing triplicate original consumer credit contracts. Similarly, National has effectively set

---

[10] Although the court's ruling in no way relies upon testimony or exhibits advanced at any hearing, the court notes that, similar to CBS, some evidence suggests that Cars Unlimited may have "harbored personal spite" against National as it was shortly after National both refused to fund an expensive vehicle and allegedly attempted to extort additional floor planning fees that Cars Unlimited sought duplicate titles, liquidated large portions of accounts receivable that were purportedly National's collateral, and allegedly transferred the proceeds out of the corporation.

forth a claim of business conspiracy. As a result, the court **DENIES** Cars Unlimited's motion to dismiss Counts Two and Four of the Second Amended Counterclaim. Additionally, as discussed above in footnote nine, the court **GRANTS** National's motion to strike the portions of Cars Unlimited's rebuttal brief that reference testimony offered during the temporary restraining order hearing as it is improper for the court to consider such testimony without converting the instant motion into a motion for summary judgment.

The Clerk is **REQUESTED** to mail copies of this Order to counsel of record.

**IT IS SO ORDERED.**

/s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
January 19, 2007